# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

**NORVELL WEBSTER CRUMP,**

    **Movant,**

v.                                                          **Case No. 3:16-cv-05821**
                                                                **Criminal Case No. 3:94-cr-00101**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On October 10, 2018, the Honorable Robert C. Chambers, United States District Judge, remanded Movant's pending Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 274), to the undersigned United States Magistrate Judge for additional findings of fact and recommendations for disposition. (ECF No. 293). Specifically, the undersigned was asked to consider the underlying merits of Movant's argument that his criminal history was insufficient to qualify him as an armed career criminal under 18 U.S.C. § 924(e). (*Id.*). Having now thoroughly examined Movant's argument regarding his criminal history, the undersigned **FINDS** that Movant's two prior felony convictions for malicious wounding under West Virginia law and his prior felony conviction for possession of cocaine with intent to distribute under federal law constitute the three predicate convictions necessary to qualify Movant as an armed career criminal under 18 U.S.C. § 924(e). Therefore, the undersigned respectfully **RECOMMENDS** that Movant's § 2255 motion be **DENIED**,

and this matter be **DISMISSED** from the docket of the Court.

I.  <u>Relevant History</u>

In August 1995, after a jury trial in this Court, Movant was convicted of conspiracy to possess with intent to deliver cocaine base (Count One); possession of a firearm by a convicted felon (Count Two); and using and carrying a firearm in relation to a drug trafficking crime (Count Three). (ECF No. 102).[1] James Wilmoth, Senior U.S. Probation Officer, prepared a presentence investigation report ("PSR"), which provided, in relevant part, an offense level computation for each count, a review of the Chapter Four enhancements, a multiple-count adjustment, a summary of Movant's prior convictions, and sentencing options available to the Court. (ECF No. 146 at 7-12, 15-16).

As to Count One, Officer Wilmoth calculated Movant's adjusted offense level under the United States Sentencing Guidelines ("USSG") to be 43. (*Id.* at 8). That figure was computed based largely on a guideline provision that increased the offense level in cases where the drug-trafficking conspiracy involved a murder. Officer Wilmoth explained in the PSR that on July 20, 1994, Movant devised a plan to rob Vance Jones, a rival drug dealer, of cocaine base and money. In the course of trying to execute his plan, Movant shot and killed Jones. Under a cross reference provision at USSG § 2D1.1(d), Jones's murder triggered application of the base offense level for First Degree Murder found at USSG § 2A1.1.

Officer Wilmoth also examined whether any Chapter Four enhancements applied to the Count One conviction. (ECF No. *Id.* at 10). In accordance with USSG § 4B1.1, Movant qualified as a career offender, because (1) he was at least 18 years old at the time

---

[1] The citations in this PF&R reference the docket entries in Movant's criminal case, *United States v. Crump*, No. 3:94-cr-00101.

2

of the instant offense; (2) the instant offense was a felony; and (3) he had at least two prior felony convictions of either a crime of violence or a controlled substance offense "as detailed below" in the PSR. (ECF No. 146 at 10). Detailed in the section on Movant's criminal history were four felony convictions: two malicious wounding convictions under West Virginia law; one jail escape conviction under West Virginia law; and one conviction of possession with intent to distribute cocaine base under federal law. (*Id.* at 10-12). Officer Wilmoth noted in the PSR that Movant's adjusted offense level using the career offender guidelines was 37; however, because the offense level associated with First Degree Murder was higher, that offense level was applied, making Movant's adjusted offense level 43 as to Count One. (*Id.* at 10).

Turning to Count Two—the felon in possession charge—Officer Wilmoth looked to USSG § 2K2.1, which also contained a cross reference to be used if a death occurred when the felon used or possessed a firearm in connection with the commission or attempted commission of another offense. (*Id.* at 8). Since Movant murdered Jones in the attempted commission of a robbery, the base offense level for First Degree Murder applied. Accordingly, Movant's base offense level was 43. (*Id.*) After making adjustments, his adjusted offense level for Count Two was also computed to be 43. (ECF No. 146 at 9).

Looking at the Chapter Four enhancements, Officer Wilmoth found that Movant qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because he had been convicted of a violation of 18 U.S.C. § 922(g) and had at least three prior convictions for violent felony or serious drug offenses, or both, committed on occasions different from one another. (*Id.* at 10). Nevertheless, Officer Wilmoth determined that Movant's adjusted offense level would remain at 43, as that level was higher than his guideline level using the armed career criminal enhancement.

3

(ECF No. 146 at 10).

Finally, Officer Wilmoth reviewed USSG § 3D1.2, which set out the procedure for determining the offense level of multiple counts, and concluded that Counts One and Two were to be grouped together under § 3D1.2. Movant's conviction on Count Three—the use of a firearm during and in relation to a drug-trafficking crime—was not included in the group, because that offense carried a specific statutory sentence that was required to run consecutively to any other sentence. Officer Wilmoth explained that, as far as the grouped counts, the offense level would be determined by the highest level offense. (*Id.* at 9). As Count One and Count Two had the same offense level of 43, the final offense level under USSG § 3D1.2 was 43. (*Id.* at 9).

In the sentencing options section of the PSR, Officer Wilmoth addressed both the statutory provisions and the sentence ranges under the USSG. (*Id.* at 15-16). As to Count One, Movant faced a statutory minimum term of imprisonment of ten years and a maximum term of life due to his prior felony drug-trafficking conviction. Under the USSG, Movant's sentence range was life imprisonment based upon an offense level of 43 and a criminal history category of VI. For his conviction under Count Two, Movant had a statutory minimum sentence of fifteen-years imprisonment. His sentence range pursuant to the USSG was, again, a life sentence. (*Id.*). Movant's conviction under Count Three carried, by statute, a mandatory five-year sentence of imprisonment to run consecutively to the other two terms of imprisonment.

On February 16, 1996, Movant appeared for sentencing. (ECF No. 148). The major point of contention at the sentencing hearing was whether the PSR accurately calculated Movant's sentence for Counts One and Two using the cross references in the USSG, which increased Movant's base offense level to 43 to account for the murder of Vance Jones.

Movant's counsel argued that the evidence submitted at trial did not establish that Movant committed murder and, therefore, application of the cross references was inappropriate. Notwithstanding these objections, the Sentencing Court found beyond a reasonable doubt that Movant intentionally shot and killed Vance Jones in the course of the conspiracy, which was a felony murder. (ECF No. 148 at 18-19, 80-81). Having made that finding, the Court further concluded that the guidelines calculations in the PSR were correct. Ultimately, the Court sentenced Movant to two life sentences on Counts One and Two, to run concurrently, and to five years on Count Three, to run consecutively to the sentences on Counts One and Two. The Court explained the reasons for the final sentence as follows:

> This sentence, of course, exceeds a 24-month sentence and the Court must give its reasons for its imposition. First, the guidelines permit the sentence, and the statutes. The evidence clearly showed in this case to the Court, and the Court finds, and it showed by far more than a preponderance of the evidence to the Court, by [sic] a reasonable doubt, that the defendant shot and killed the victim, Vance Jones, with a shotgun while attempting to rob the victim of a quantity of cocaine base, clearly an act of felony murder. At the very least it can be said that a death of a human being resulted from the defendant's activity. It was an intentional shooting. And life imprisonment is deemed an appropriate sentence by the Court in light of the defendant's one felony heretofore, as well as the fact that incapacitation is a big factor by the Court in imposing this sentence.

(*Id.* at 80-81). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed Movant's conviction and sentence on July 23, 1997. (ECF No. 163).

In June 1999, Movant filed his first Motion to Vacate, Set Aside, or Correct Sentence under § 2255, (ECF No. 165), which was denied in January 2002. (ECF No. 179). Movant subsequently filed a Motion under 18 U.S.C. § 3582 for sentence reduction and a Motion to Clarify Sentence, both of which were unsuccessful. (ECF Nos. 173, 198, 215, 249). Movant additionally attempted to have his prior state court convictions expunged,

5

but that request was denied. (ECF Nos. 258, 259).

On June 14, 2016, this Court appointed the Federal Public Defender to represent Movant and to determine whether he qualified for federal habeas relief in light of *Johnson v. United States,* 135 S. Ct. 2551 (2015), and to present any petitions, motions, or applications relating thereto to the Court. (ECF No. 270). On June 27, 2016, Movant, through counsel, filed a second or successive motion under § 2255. (ECF No. 274). In the motion, Movant argued that he was "no longer a career offender because his prior West Virginia convictions for malicious wounding and jail escape no longer qualify as crimes of violence under any portion of the career offender definition." (*Id.* at 1). Specifically, Movant asserted that his prior convictions were not included in the enumerated offenses under USSG § 4B1.2(a)(2) and did not have "as an element the use, attempted use, or threatened use of physical force against the person of another" as required by USSG § 4B1.2(a)(1). Relying on the Fourth Circuit's decision in *United States v. Torres-Miguel,* 701 F.3d 165 (4th Cir. 2012), Movant argued that because the West Virginia malicious wounding statute allowed bodily injury "by any means," the violent force necessary to meet the USSG's "crime of violence" definition was not satisfied. (*Id.* at 11-13). Therefore, Movant contended, he was not a career offender under USSG § 4B1.1 and was entitled to be re-sentenced without application of the career offender enhancement. (*Id.* at 2, 5, 12).

The United States responded in opposition to Movant's motion, asserting five reasons why the motion should be denied. First, the United States pointed out that while Officer Wilmoth found Movant to be a career offender when examining the Chapter Four enhancements relevant to Movant's conviction on Count One, Movant was not sentenced as a career offender. Instead, his sentence was driven by the cross reference related to First Degree Murder. (ECF No. 286 at 18-21). Second, the United States argued that the

motion was not timely, because it was filed well beyond the one-year limitation period permitted by 28 U.S.C. § 2255(f). (*Id.* at 21-29). The United States disagreed that *Johnson* created a "new right" allowing the claims raised by Movant to be filed after the one-year limitation; particularly, as the Supreme Court of the United States ("Supreme Court") had not recognized a *Johnson*-based argument applicable to the career offender guidelines. Third, the United States contended that Movant had procedurally defaulted his claims and had failed to show good cause to excuse his default. (*Id.* at 29-31). Fourth, the United States asserted that *Johnson* had not been made retroactive on collateral review to a case involving career offender guidelines, nor to a case challenging the force clause of the crime of violence definition. (*Id.* at 31-36). Finally, the United States claimed that, in any event, Movant's suggestion that his predicate offenses did not meet the force clause of the career offender guidelines was without merit. (*Id.* at 36-47).

Movant filed a reply memorandum on December 15, 2016. (ECF No. 287). In a footnote in his memorandum, Movant broadened his argument to include, for the first time, a challenge to his designation in the PSR as an armed career criminal under Count Two. (*Id.* at 2, n. 1). Relying on the same grounds as those used to challenge his career offender status, Movant conceded that his prior controlled substance conviction qualified as a predicate offense, but maintained that his malicious wounding and jail escape convictions were neither crimes of violence under USSG § 4B1.1, nor violent felonies under 18 U.S.C. § 924(e). (*Id.* at 3).

In Proposed Findings and Recommendations ("PF&R") filed on December 12, 2017, the undersigned recommended that Movant's motion be denied. (ECF No. 288). However, that recommendation was adopted only in part, because the matter of Movant's status as an armed career criminal and the impact of that status on resentencing were not

addressed in the PF&R. The presiding District Judge accepted that there was no error in Movant's sentencing under Count One, and further noted that Movant received a life sentence on that Count. Given these circumstances, the Court ordered the parties to brief the issue of whether the Court had the authority to resentence Movant on Count One if the Court found that resentencing Movant on Count Two was appropriate. After receiving a memorandum from Movant, and receiving nothing from the United States, the presiding District Judge remanded the case to the undersigned Magistrate Judge to address the sole issue of whether Movant's criminal history was sufficient to qualify him as an armed career criminal.

## II.  Discussion

In February 1996, a criminal defendant qualified as an armed career criminal under the ACCA and was subject to the provisions of USSG § 4B1.4 if the defendant violated 18 U.S.C. § 922(g) and had "three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C.A. § 924(e). The ACCA defined the term "violent felony" to mean:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> **(ii)** is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C.A. § 924(e)(2)(B). The phrase appearing at § 924(e)(2)(B)(i) was referred to as the "force clause." The first portion of § 924(e)(2)(B)(ii) contained the "enumerated acts,"

and the catchall phrase at the end of (ii)—"*or otherwise involves conduct that presents a serious potential risk of physical injury to another*"—was known as the "residual clause."

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court considered whether the residual clause in the ACCA's definition of "violent felony" was constitutional. Finding that the clause left too much uncertainty as to what acts and crimes would qualify as violent felonies, the Supreme Court concluded that the residual clause was unconstitutionally vague. *Id.* at 2557-58. As such, the Supreme Court found that imposing an enhanced sentence by using the residual clause of the ACCA violated the United States Constitution's guarantee of due process. *Id.* at 2563. Because the decision in *Johnson* was a new rule of substantive constitutional law, rather than merely a procedural change, *Johnson* had a retroactive effect on cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016); *United States v. Winston,* 850 F.3d 677, 682 (4th Cir. 2017) ("We therefore hold that when an inmate's sentence may have been predicated on application of the now-void residual clause and, therefore, may be an unlawful sentence under the holding in *Johnson II*, the inmate has shown that he 'relies on' a new rule of constitutional law within the meaning of 28 U.S.C. § 2244(b)(2)(A).").

Based on *Johnson*, Movant argues that his sentence under Count Two is unconstitutional, because with the removal of the residual clause from the ACCA's definition of violent felony, Movant does not have three prior convictions that qualify as violent felonies or serious drug offenses. Movant was found guilty of Count Two, which was a violation of 18 U.S.C. § 922(g). Furthermore, Officer Wilmoth determined that Movant had "at least three prior convictions for a violent felony or serious drug offense, or both, committed on occasions different from one another." (ECF No. 146 at 10). The "at least three prior" felony convictions were "as detailed below" in the criminal history

9

section of the PSR.[2] (*Id.* at 10-12). The PSR described four felony convictions, including: (1) a malicious wounding that occurred on December 2, 1986 when Movant beat his wife with a 25-pound weight; (2) a malicious wounding on January 13, 1987 when Movant stabbed his wife; (3) a jail escape on February 2, 1988 that occurred while Movant was awaiting trial on the malicious wounding charges; and (4) possession of cocaine with intent to distribute on August 12, 1991, which was prosecuted in federal court.

In their briefs, the parties agreed that Movant's jail escape conviction no longer qualified as a "violent felony" under the ACCA post-*Johnson.* On the other hand, they agreed, either explicitly or implicitly, that Movant's felony conviction for possession with intent to distribute cocaine base qualified as a serious drug offense. Neither party claimed that malicious wounding was an "enumerated act" in § 924(e)(2)(B)(ii). Accordingly, in order for Movant to continue to qualify as an armed career criminal under the ACCA, his two malicious wounding convictions must satisfy the "force clause" of the definition of violent felony found at 18 U.S.C. § 924(e)(2)(B)(i).

---

[2] Although there has never been any indication that Movant lacked "adequate notice of the government's plan to seek [an ACCA] enhancement and of the convictions that may support the enhancement," or that Movant was denied the opportunity to contest the validity of the predicate convictions, the undersigned distinguishes the Fourth Circuit's decision in *United States v. Hodge,* 902 F.3d 420, 427 (4th Cir. 2018) from the present case. In *Hodge,* a habeas action based on a *Johnson* challenge, the Fourth Circuit prohibited the Government from replacing a now invalid predicate conviction with a different conviction that was not identified as a predicate offense at the time of sentencing. In Hodge's PSR, the Probation Officer specifically identified the three convictions used to support Hodge's armed career criminal status. At least seven other convictions were set out in the criminal history, including the offense the Government sought to add in the habeas proceeding, but the PSR declined to designate them. The Fourth Circuit concluded that by specifically designating some convictions as predicate offenses, and not others, the PSR implied an intentional exclusion of the others. (*Id.*). Accordingly, the Fourth Circuit found that "[p]ermitting the Government to use such latent convictions for the first time 'at this stage would unfairly deprive petitioner[s] of an adequate opportunity to respond.'" (*Id.* at 429) (quoting *Giordenello v. United States,* 357 U.S. 480, 488 (1958)). In contrast, in this case, while the Probation Officer did not designate which of Petitioner's convictions were considered predicate offenses under the ACCA, the language of the PSR, which included four felony convictions, suggested that all four were considered as supportive of the designation. (ECF No. 146 at 10-12). Moreover, two of the prior convictions were for malicious wounding and one was for jail escape, all of which were based on guilty pleas. Movant received concurrent sentences for all three offenses and was sentenced for them on the same day. Movant did not object to the validity of the convictions, nor did he allege that he was precluded from challenging them at the time of his federal sentencing due to lack of notice that they were being used as predicate convictions.

10

Since the parties last briefed this legal issue, the Fourth Circuit decided *United States v. Covington*, a case which effectively disposes of Movant's § 2255 motion. 880 F.3d. 129 (4th Cir. 2018). In *Covington,* the defendant was classified as a career offender[3] in the PSR based upon two prior felony convictions in West Virginia: one for robbery with a firearm and the other for unlawful wounding under W. Va. Code § 61-2-9(a). The defendant did not object to the classification; however, prior to sentencing, the district court *sua sponte* ordered the parties to brief the issue of whether unlawful wounding was a crime of violence under the USSG.

At sentencing, the district court concluded that unlawful wounding did not qualify as a crime of violence, because a defendant could unlawfully wound a victim without using violent force as required by the force clause of the career offender guidelines. *Id.* at 134. Relying on the Fourth Circuit's opinion in *Torres-Miguel,* 701 F.3d at 165, the court hypothesized that a defendant could commit the crime by indirect means, such as withholding medication from a gravely ill victim, or by directing the victim to drive unknowingly into oncoming traffic. *Id.* After the court sentenced the defendant without applying the career offender enhancement, the United States appealed.

On appeal, the Fourth Circuit examined West Virginia Code § 61-2-9(a), which contains both the elements of the crime of malicious wounding, as well as the elements of the crime of unlawful wounding. West Virginia Code § 61-2-9(a) states as follows:

> If any person *maliciously* shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony and, upon conviction thereof, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done

---

[3] Although *Covington* addresses the definition of "crime of violence" under the career offender guidelines, the definition of "violent felony" under the ACCA contains the same language. Thus, a violent felony is a crime of violence, and a crime of violence is a violent felony, making *Covington* and similar cases relevant to the disposition of Movant's § 2255 motion.

11

> *unlawfully*, but not *maliciously*, with the intent aforesaid, the offender shall be guilty of a felony and, upon conviction thereof, shall, in the discretion of the court, either be imprisoned in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding $500.

W. Va. Code § 61-2-9(a) (emphasis added).[4] Using the categorical approach, the Fourth Circuit focused on the minimum contact required for conviction under the West Virginia statute, comparing the elements of the offense of unlawful wounding to the elements of the force clause in the career offender guidelines. *Covington*, 880 F.3d at 133. This task "yield[ed] the conclusion that unlawful wounding under § 61-9-2(a) categorically qualifies as a crime of violence under the force clause." *Id.* The Fourth Circuit discussed the Supreme Court's decision in *United States v. Castleman,* 134 S. Ct. 1405 (2014), reaffirming that *Castleman* abrogated the "direct versus indirect use of force distinction articulated in *Torres-Miguel*." *Id.* at 134. The Fourth Circuit made clear that the phrase "use of force" in the force clause includes direct and indirect applications of force; the relevant issue being that the "use of force" involves the knowing and intentional application of force to cause physical harm. *Id.* (quoting *Castleman,* 134 S. Ct. at 1415) ("In *Castleman*, the Supreme Court explained that when a defendant uses poison against another person, the relevant use of force ... is not the act of sprinkl[ing] the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.") (internal markings omitted). Accordingly, the Fourth Circuit remanded the case for resentencing in accordance with the opinion.

---

[4] This is the version of the code section in effect at the time of Movant's state convictions for malicious wounding. The version of the statute considered by the Fourth Circuit in *Covington* contained some stylistic modifications, but no substantive changes and, most importantly, no differences in the elements of the crimes.

Obviously, if unlawful wounding qualifies as a crime of violence under the force clause, malicious wounding likewise meets the definition of a crime of violence. Such a determination is consistent with prior opinions of this Court and other Fourth Circuit opinions that emphasize the intentional infliction of injuries. *See, e.g., United States v. Cobbs,* 274 F. Supp. 3d. 390, 394-95 (S.D.W. Va. 2017) (finding that unlawful wounding, a crime that involves "intentionally injuring another person necessarily entails the use of 'force capable of causing physical pain or injury.'") (quoting *Johnson v. United States,* 559 U.S. 133, 140 (2010)); *see also United States v. Reid,* 861 F.3d 523, 529 (4th Cir. 2017) (holding that the ACCA's phrase "use of force" includes "force applied directly or indirectly); *United States v. Irby,* 858 F.3d 231, 236 (4th Cir. 2017) (explaining that the "use of force" is the act of employing a device or exerting force to intentionally cause physical harm to another)); *United States v. Jenkins,* 719 Fed. Appx. 241 (4th Cir. 2018).

In *United States v. Jenkins*, *supra*, the Fourth Circuit considered whether the district court properly sentenced the defendant as an armed career criminal using predicate convictions for unlawful and malicious wounding under a Virginia statute with elements that mirror those in West Virginia Code § 61-2-9(a). Although *Jenkins* is an unpublished decision, it is illustrative and persuasive on the issue in dispute here. In the PSR, a recommendation was made that Jenkins be sentenced as an armed career criminal based upon three state convictions; including, one serious drug offense, an unlawful wounding offense, and a malicious wounding and aggravated malicious wounding offense. Jenkins argued that none of the wounding offenses qualified as violent crimes. The district court rejected that argument and sentenced Jenkins as an armed career criminal.

On appeal, the Fourth Circuit examined the Virginia statute, which read as follows:

13

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Va. Code Ann. § 18.2-51. Jenkins argued that the elements of the statute categorically failed to meet the elements of the ACCA's force clause because the statute included the phrase "by any means." Thus, bodily injury caused by *de minimus* force could satisfy the Virginia statute, whereas only bodily injury caused by violent force could meet the requirements of the ACCA's force clause. Significantly, Jenkins's argument is the very argument advanced by Movant. (ECF No. 274 at 12).

The Fourth Circuit rejected Jenkins's position, explaining that "[w]hatever the strength of such arguments when applied to other offenses, they are defeated here by § 18.2-51's *mens rea* element, requiring the specific intent to kill or seriously injure the victim. *Jenkins,* 719 Fed. Appx. at 244-45. The Fourth Circuit found that it was not plausible that a conviction requiring an intent to kill, maim, disfigure, or disable would rest on conduct that was incapable of fulfilling that intent, unless the conduct was accompanied by at least an attempt or threat to do more serious bodily harm. *Id.* at 245. Specifically addressing malicious wounding, the Fourth Circuit noted that the crime of malicious wounding required a higher degree of culpability and proof of additional elements than unlawful wounding. Consequently, "if ... unlawful wounding qualifies categorically as a violent felony, then it follows that the more serious offenses, requiring proof of the same as well as additional elements, also qualify." *Id.* at 244, n. 3.

In view of these cases, which post-date much of the briefing in the instant action, the undersigned **FINDS** that Movant's criminal history is sufficient to qualify him as an

14

armed career criminal under 18 U.S.C. § 924(e). Movant's two malicious wounding offenses, which were committed on different occasions, and his conviction for possession with intent to distribute cocaine base constitute three predicate felony convictions. Thus, as there was no error in the PSR and no error in the sentencing, the undersigned further **FINDS** that Movant has failed to state grounds that would justify his request for resentencing.

### III.     Proposal and Recommendations

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 274), be **DENIED** and this action be **DISMISSED,** with prejudice, and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if PF&R is received by mail) from the date of filing this PF&R within which to file with the Clerk of this Court, specific written objections, identifying the portions of the PF&R to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th

Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant, Respondent, and counsel of record.

**FILED:** March 6, 2019

Cheryl A. Eifert
United States Magistrate Judge